**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GARY KRANTZ, on behalf of his minor son K.K.; and BRENDA RUSSELL, mother of K.K., | No. 14-35628 |
| | D.C. No. 3:12-cv-05848-RBL |
| Plaintiffs-Appellants, | |
| v. | MEMORANDUM[*] |
| ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted March 7, 2017
Seattle, Washington

Before: GRABER, IKUTA, and HURWITZ, Circuit Judges.

Gary Krantz, on behalf of his minor son K.K., appeals the district court's

order amending K.K's judgment against Allstate Property & Casualty Insurance

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Company (Allstate) to grant Allstate a setoff and offset against the amount the jury awarded. We have jurisdiction under 28 U.S.C. § 1291 and review the district court's ruling for abuse of discretion. *Meritage Homes of Nev., Inc. v. FDIC*, 753 F.3d 819, 822–23 (9th Cir. 2014). We affirm in part, vacate in part, dismiss in part, and remand.

The district court did not err in holding that the $65,000 that K.K. received as part of a global settlement with the alleged tortfeasors was a payment from a "responsible" party. Giving the word "responsible" its "plain, ordinary, and popular meaning," *Int'l Marine Under Writers v. ABCD Marine, LLC*, 179 Wash. 2d 274, 282 (2013), Dean Wenner was "responsible" for the foreseeable injuries to K.K. that resulted from his breach of a legal duty, *see* Webster's Third New International Dictionary 1935 (2002) (defining "responsible" as "likely to be called upon to answer" and "creditable or chargeable with the result"); *see also* Wash. Rev. Code § 66.44.270(1) (prohibiting the furnishing of liquor to minors). Because the insurance contract between Krantz and Allstate entitled Allstate to a setoff for "all amounts paid by the owner or operator of an underinsured motor vehicle or anyone else responsible," the district court did not err in amending the judgment to afford Allstate a $65,000 setoff. *Allstate Insurance Co. v. Batacan* is

not to the contrary because the text of the policy in *Batacan* was materially different from the text here.  139 Wash. 2d 443, 447 (1999).

The Washington Supreme Court has not suggested that it would interpret section 48.22.030(1) of the Washington Revised Code as forbidding this setoff. The plain language of section 48.22.030(1), which merely defines the term "underinsured motor vehicle," does not limit setoffs to payments from "applicable" insurers, and Krantz has cited no case holding otherwise.  *Allstate Insurance Co. v. Dejbod* addressed the distinct question whether a tortfeasor's insurance policy is "applicable" within the meaning of section 48.22.030(1) so that a UIM insurer can setoff the full extent that the insured could legally require the tortfeasor's insurer to pay, where the insured has settled with the tortfeasor for less than that amount.  63 Wash. App. 278, 286–87 (1991).  *Dejbod* does not suggest that section 48.22.030(1) overrides a contractual provision allowing the insurer to setoff amounts that the insured has actually received from other responsible parties. Moreover, Washington courts have frequently held that UIM insurance should not permit insured parties to recover more than their total damages, *see, e.g.*, *Elovich v. Nationwide Ins. Co.*, 104 Wash. 2d 543, 550 (1985), and the interpretation that Krantz advances would allow K.K. to do so.  In light of section 48.22.030(1)'s text and purpose as elucidated in Washington case law, *see id.*, we cannot predict that

3

the Washington Supreme Court would hold that the insurance policy at issue here violates Washington law. We therefore affirm the district court's award of a $65,000 setoff to Allstate.

The district court properly assessed against Allstate a pro rata share of attorneys' fees measured as a percentage of the total recovery secured.[1] *See Bowles v. Wash. Dep't of Ret. Sys.*, 121 Wash. 2d 52, 72 (1993). The total recovery provides the appropriate reference amount because "the size of the recovery constitutes a suitable measure of the attorneys' performance." *Id.* Krantz is also entitled to recover Allstate's pro rata share of costs incurred in generating the common fund, which includes expenses in securing the settlement from the alleged tortfeasor as well as the expenses in securing the judgment. *See Safeco Ins. Co. v. Woodley*, 150 Wash. 2d 765, 772 (2004). The district court assessed against Allstate only a pro rata share of the $7,485.11 claimed in Krantz's final bill of

_____

[1] The dissenting opinion errs by misapprehending what constitutes the common fund. Under Washington law, the common fund comprises the total amount of proceeds generated by the insured. *See Winters v. State Farm Mut. Auto. Ins. Co.*, 144 Wash. 2d 869, 881 (2001). K.K. generated a total recovery of $81,708.32 ($65,000 from the global settlement and $16,708.32 from Allstate). The jury's verdict (that K.K. sustained $81,708.32 in damages) did not generate a fund of $81,708.32, because Allstate was responsible for paying only $16,708.32 of that amount, given the setoff. Because the dissenting opinion's calculation of Allstate's pro rata share of attorneys' fees is based on a fund comprised of $146,708.32 (adding $65,000 and $81,708 together), it is incorrect.

4

costs for the litigation in this action. It is unclear from the district court's order whether it excluded Krantz's claimed expenses unrelated to this litigation as a matter of law, or for want of evidentiary support in the record. Under Washington's common fund doctrine, however, the recoverable costs are not limited to statutory costs. *See id.* (referring broadly to "legal expenses").

Given the ambiguity in the district court's order, we cannot effectively review the calculation of additional costs. We therefore vacate the order amending the judgment in part, but only as to the award of a pro rata share of costs. On remand, the district court should consider all legal costs related to the settlement and this litigation and assess against Allstate its pro rata share of those expenses that Krantz can establish.[2]

To the extent that Krantz challenges the district court's award of costs to Allstate, we dismiss the appeal for lack of jurisdiction because the district court's costs order was not encompassed within the certification for appeal pursuant to Rule 54(b). *See Chacon v. Babcock*, 640 F.2d 221, 222 (9th Cir. 1981).

The parties shall bear their own costs on appeal.

---

[2] We express no view as to whether the current record supports awarding any or all of Krantz's claimed expenses, and we leave to the district court's discretion whether to reopen the record on remand to receive further evidence of the claimed expenses.

**AFFIRMED IN PART, VACATED IN PART, DISMISSED IN PART, AND REMANDED.**

*Krantz v. Allstate Prop. & Cas. Ins. Co.*, No. 14-35628

HURWITZ, Circuit Judge, concurring in part and dissenting in part:

I concur in the memorandum disposition except insofar as it concerns Allstate's responsibility for attorneys' fees incurred by K.K.

I agree with the majority that Allstate must contribute its pro rata share of K.K.'s legal expenses incurred in creating the common fund. *See Safeco Ins. Co. v. Woodley*, 82 P.3d 660, 663 (Wash. 2004). I also agree with the majority that the pro rata share is calculated by dividing the amount of personal injury protection ("PIP") reimbursement by the amount of total damages, *see id.*, and that calculation results in a pro rata share of 12%.

But, the majority errs insofar as it concludes that Allstate is only liable for 12% of K.K.'s attorneys' fees incurred in the underinsured motorist insurance ("UIM") litigation against Allstate. Rather, *Woodley* expressly holds that when the insurer, as here, seeks to recoup previously paid PIP benefits, the common fund consists of both the recovery from the tortfeasors and the recovery from the UIM insurer. *Id.* It is undisputed that K.K. incurred $80,517.62 in legal expenses (including fees) in the actions against the tortfeasors and the UIM carrier. Allstate's 12% share should be calculated against this amount. I therefore respectfully dissent from the memorandum disposition's treatment of Allstate's obligation for attorneys' fees.

1